ROBERT G. DOWD and MARCELLIAN B. DOWD, JOSEPH DATTILO and JEAN. DATTILO, JOSEPH MACIOCIA and VERA MACIOCIA, CHARLES BRUSATTI, DOUGLAS O. BROOKS, HARRY FREISE, JR., and HAZEL FREISE, FRANK GIANINO and DOROTHY GIANINO, ROLAND H. ROEDIGER, GERTRUDE E. GOESSLING, LELIA K. GOESSLING, RUSSELL PARK; LEO H. KUEPER, JR., and CAROLINE V. KUEPER, W. J. LAMMI and MILDRED LAMMI, CLIFFORD SHERMAN and DARLIS SHERMAN, FRED W. FLECK and VALERIA M. FLECK, FRANK H. WAGNER, LOUIS WILCOX and JAMES B. GANNON, JR., VANCE T. BROOKS, LEO MARCHI and FRANCIS MARCHI, MRS. DELLA WALTHER, STELLA WILLOUGHBY BOWMAN, ALICE E. GRIMM and HOWARD GRIMM, MRS. BESSIE PARK, JANE M. WILLOUGHBY WILLIAMS, DORABELLE McCALL, OWEN H. GRIFFITHS and OLGA M. GRIFFITHS, Respondents, v. LAKE SITES, INCORPORATED, a Corporation, Appellant, No. 44128—276 S. W. (2d) 108.

Division Two, February 14, 1955.

Motion for Rehearing or to Transfer to Banc Overruled, March 14, 1955.

84

*Ziercher & Tzinberg* and *H. L. C. Weier* for defendant-appellant.

*Dearing & Matthes* and *M. C. Matthes* for plaintiffs-respondents

86

[109] BOHLING, C.—Robert G. Dowd and Marcellian B. Dowd, husband and wife, and, as we read the record, twenty-five owners of one or more lots in Lake Tekakwitha Subdivision of Jefferson County, Missouri, instituted this suit as a class action on behalf of themselves and other lot owners in said subdivision to restrain the threatened granting of the privileges of said subdivision to owners of lots outside of the platted boundaries of said subdivision by Lake Sites, Incorporated, a corporation, and for a decree "declaring that plaintiffs and other lot owners in said subdivision and their heirs, successors and assigns have the exclusive right to use" the lake, roadways and parkways therein. The decree of the court granted the injunctive relief prayed for in the petition, and adjudged and decreed that the respondents and other owners of lots in said subdivision, as shown by

the plat of record thereof, their heirs, successors and assigns and guests "have the exclusive right to use said Lake Tekakwitha Subdivision and all facilities and privileges incident thereto." The defendant has appealed, contending respondents are not entitled to the relief granted.

Respondents suggest we may not have jurisdiction over the appeal, stating that title to real estate is not involved. They cite Stewart v. Stewart, Mo., 269 S. W. 2d 49, 51[4], a partition suit wherein the only controverted issue was the method in which the partition was to be accomplished, there being no controversy regarding any share of the several tenants in common in the real estate. In the instant proceeding the pleadings sought an adjudication and the judgment adjudged and decreed in the lot owners, as an appurtenant to their respective lots, an "exclusive" easement in the lake, roadways and parkways of the subdivision. A title controversy is in issue and adjudicated, and title to real estate is directly and not merely incidentally or collaterally involved. Jurisdiction of the appeal is in this court. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. 2d 771, 774, 775; Farmers Drainage Dist. v. Sinclair Refining Co., Mo., 255 S. W. 2d 745, 748[2]; Mills v. Taylor, Mo., 270 S. W. 2d 724, 726[1]; Hunter v. Hunter, 355 Mo. 599, 197 S. W. 2d 299, 300[1]; Hoelmer v. Heiskell, 359 Mo. 236, 221 S. W. 2d 142, 143 [1, 4].

The pleadings, the trial and the presentation here proceed upon the theory that respondents were deceived and induced to purchase their respective lots by reason of fraudulent representations made upon behalf of appellant by the salesmen of the lots.

Ed Buscher, as trustee for himself, Bill Buscher, Edward R. Blades and I. J. Shyne, acquired title to the NW fractional part of Sec. 29, Twp. 43, R. 3, containing approximately 144 acres. It was their purpose to create a lake thereon, plat the property, and sell the lots. Missouri State Highway F passes through the property, taking approximately 4 acres of the land. About 40 acres are north and 100 acres are south of said highway. The owners caused Lake Sites, Incorporated, to be organized, with Ed Buscher, President, Bill Buscher. Vice-president and Assistant Secretary, John Wahl, [110] Treasurer, and I. J. Shyne, Secretary. They, with Mr. Blades, constituted appellant's Board of Directors. The title to the 144 acres was transferred to said corporation. Theodore Hurtgen, a surveyor, was employed to survey the 144 acres, establish the shoreline of the lake to be created by the construction of a dam and to plat the property into lots. The lake covers approximately 20 acres. He platted the 100 acres south of the highway. He did not, at that time, finish platting the 40 acres north of Highway F.

Appellant was desirous of proceeding with the development. On May 24, 1949, appellant filed in the Recorder's Office of Jefferson County, Missouri, said plat of Lake Tekakwitha Subdivision, con-

sisting of a lake, roadways, parkways, paths and 182 lots, divided into Blocks 1, 2, 3 and 4, all south of said Highway F, and proceeded with the sale of said lots. The surveyor did not plat the 40 acres north of Highway F until the Spring of 1952, and the 40 acres, being considered suitable for summer homes, was subdivided into larger tracts, there being 35 tracts in the plat thereof. When respondents were advised of the threatened sale of said tracts by appellant with the right to use the facilities of Lake Tekakwitha Subdivision in the purchasers thereof, this suit was instituted.

Under stipulation of the parties it was admitted that respondents were owners of lots in Lake Tekakwitha Subdivision and the following exhibits were introduced in evidence by respondents: A deed conveying the 144 acres to Ed Buscher as trustee. A deed conveying said 144 acres to appellant-corporation. A copy of the recorded plat of Lake Tekakwitha Subdivision. A copy of the application to purchase lots in said subdivision from appellant, such an application having been executed by each purchaser of a lot in the subdivision. A small photographic reproduction of the plat (with the dedication recitals omitted), convenient for handing to prospective purchasers. These exhibits are ''Plaintiffs Exhibits'' A, B, C, D and E, respectively.

We briefly outline the parol evidence. The fraudulent representations, admitted over objections interposed on behalf of appellant, made by salesmen and inducing respondents to purchase lots in the subdivision were to the following effect: The subdivision as shown on the plat constituted the whole development. The lake, roadways, parkways et cetera of the subdivision were for the use and benefit of the owners of the lots therein and their guests. When the 182 lots shown on the plat were sold appellant was going to move out and turn the management of the subdivision over to the lot owners, who could form their own association. Respondents were not informed and did not know of appellant's intention to subdivide the land north of Highway F and sell lots or tracts therein with privilege of user of the facilities of Lake Tekakwitha Subdivision. There was testimony that some respondents purchased additional land in the subdivision or made improvements on their lots after being informed of appellant's intention to sell the tracts north of Highway F with the privilege of using the facilities of Lake Tekakwitha Subdivision.

On behalf of appellant: It was the intention of the incorporators from the beginning to subdivide the whole of the 144 acres, and sell the lots or tracts thus divided with the privilege of user of the lake, roadways and parkways of the subdivision. Theodore Hurtgen, a surveyor, was employed to lay out the subdivision. He was under pressure to perform other work and when he platted the 100 acres south of Highway F it was agreed that he might perform the other work with the understanding he was to return and subdivide the 40

acres north of Highway F. As stated the plat of the 100 acres was recorded and the sale of the 182 lots began. Although requested many times to complete his work, the surveyor did not subdivide the 40 acres north of Highway F until the Spring of 1952. Appellant entered into a written contract with H. Glenn Weber, who was engaged in the real estate business, to sell the 182 lots and also the lots or tracts north of Highway F when platted. The lots were sold by salesmen employed by Weber. Such lots as were sold by the incorporators of [111] appellant were sold under Weber's direction, and they received a like commission on their sales. Appellant adduced testimony that the alleged fraudulent representations were not made, and that whenever the question arose, it was explained that the 40 acres north of Highway F was to be subdivided and the purchasers were to have the privilege of using the lake and facilities south of Highway F. Several purchasers of lots south of Highway F testified that when they made their purchases they were informed the land north of the highway was to be subdivided as a part of the original development and purchasers thereof would have the privilege of using the lake and other facilities shown on the plat. Appellant caused to be prepared and published prior to the sale of any lots newspaper articles in which the statement was made that the whole of the 144 acres were included in the development. Many purchasers own more than one lot. At the time of trial there were approximately 100 to 105 owners of property south of Highway F, and there remained of the 182 lots 14 to 16 lots unsold.

Appellant certified on the plat of the 100 acres (Respondents' Exhibit C) that Lake Sites, Incorporated "is the owner of the lands comprising Lake Tekakwitha Subdivision," being lands "lying within the boundaries as shown upon this plat * *."

It is also expressly stated upon said plat that:

"Lake Sites, Incorporated, reserves the title to all roadways, drives, parkways, pathways, and parks surrounding the lake."

The "application" (Respondents' Exhibit D), executed by each purchaser of lots in the subdivision, contained provisions to the following effect, material here:

The purchaser specified the number of the block and the lot desired, viz.: "Lot No. —, Block No. —"; and agreed to pay therefor as filled in in the application. Upon payment, the applicant was "to receive a warranty deed" conveying a merchantable fee simple title to the lots described, "but subject to the covenants and restrictions contained in the plat of said land, and which are printed on the back of this application."

Appellant agreed to diligently prosecute the development of the subdivision, including the construction of necessary roads and paths; "to reserve a parkway surrounding the lake to which the owner of said lot shall have access at all times;" to maintain all improvements

in the subdivision up to January 1, 1951, at its sole expense, after which date the applicant agreed to pay an annual assessment for such expenses to be levied by the appellant, not exceeding, however, $25 per lot per annum for the tier of lots nearest the lake and $20 per lot per annum for all others. The application was not binding on appellant until acceptance by it "and subject to the terms of the acceptance submitted herewith."

The acceptance by the appellant repeated the covenants on the part of the appellant to construct the roads et cetera, to execute a deed, to maintain the improvements up to January 1, 1951, and also "to reserve a parkway surrounding said lake to which the owner of said lot shall have access at all times." It also contained the following statement on its face: "The company will not be responsible for any representations not incorporated in this contract."

The "Restrictions" referred to in the application and material here, appearing on the reverse side thereof, read:

"The following restrictions shall be subject to proper enforcement clauses:

"Deeds to lots in this block will be made subject to the following covenants and restrictions which shall run with the land and bind all subsequent owners until and including January 1, 1975. * * *

"12. As a part of the consideration for the sale of this lot grantor shall have the right to assess the owner of this lot beginning January 1, 1951, and each succeeding January 1st thereafter such sum as grantor shall deem necessary for the management, upkeep and maintenance of the Dam, Road and other improvements; provided, however, that no assessment for any one year [112] shall exceed the sum of $25.00 per lot or tract for first tier lots and $20.00 per lot or tract on all others * *.

"Said grantee, his heirs and assigns, shall, subject to compliance with the foregoing restrictions, and while holding said lot, have license personally and for the family and lot owner's guests, to the use and privileges of the lake in said subdivision, which shall include boating, bathing, fishing and the use of the private beaches only, also the parkway surrounding said lake, including the right to moor boats in front of said parkway, all subject to the rules and regulations prescribed by grantor from time to time.

"All of the covenants and agreements herein made shall run with the land and shall bind the grantor herein, its successors and assigns, and the individual resident lot owners, their heirs and assigns."

One who has been the victim of fraud in the inducement of a contract, as here pleaded and relied on, may proceed in equity to rescind the contract, or affirm the contract and demand its completion or damages for noncompletion, or bring an action for damages for the fraud. Metropolitan Paving Co. v. Brown-C. Inv. Co., 309 Mo. 638, 274 S. W. 815, 820; National Theatre Sup. Co. v. Rigney, Mo. App.,

130 S. W. 2d 259, 261; 24 Am. Jur. 8, § 190; 37 C. J. S. 354, § 65. In such instances, as contended by respondents, a broad latitude is indulged in the admission of testimony to establish fraud. Respondents stress 32 C. J. S. 942, § 979, a, reading: "It is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true intentions of the parties. The rule in this respect is not rendered inapplicable by the fact that the writing contains a recital to the effect that all agreements between the parties are contained therein, * * or that no representations had been made, or that all representations were merged in the written contract * *; and the fact that the writing recites that it contains the only representations made and relied on has been held not to prevent a party from showing the contrary by parol evidence." See also respondents' cases of National Theatre Sup. Co. v. Rigney, supra; Rice v. Lammers, Mo. App., 65 S. W..2d 151, 153[4, 8, 9]; Rabenau v. Harrell, 278 Mo. 247, 213 S. W. 92, 94[7].; Boyles v. Burnett, 213 Mo. App. 288, 249 S. W. 719, 721[1]; and Wells v. Adams, 88 Mo. App. 215, 227 (involving fraud in the execution of the, and not the inducement to, contract). In respondents' cases, as stated in the quotation from 32 C. J. S. supra, the evidence is admitted for the purpose of invalidating the written instrument.

The rule relied on by respondents is subject to limitations. It is stated in 32 C. J. S. 952, § 979, d, that parol testimony establishing fraud in the procurement of a written contract "cannot be legally used to control or vary the terms of such agreement." 20 Am. Jur. 968, § 1104. Titles to real estate would be uncertain, and statutes requiring contracts relating thereto to be in writing and for their registration would be of questionable value if the effect of the contract provisions are to be determined by the testimony of witnesses.

In McPherson v. Kissee, 239 Mo. 664, 669, 144 S. W. 410, 412, the parties agreed to exchange property, defendant contracting that his property was subject to two deeds of trust to secure the payment of $5,000. However, his land was subject to three deeds of trust to secure $5,803. The deed of trust not mentioned in the contract secured $803, which defendant contended was for interest on $4,000 of the $5,000 mentioned in the contract, did not constitute a separate indebtedness, and of which he verbally notified plaintiff. The court stated: "All such evidence was improperly admitted, as tending to vary and change the terms of a written contract which purported to fully describe all the encumbrances on the property." And, with respect to plaintiff's contention that defendant verbally represented one creditor would extend the time for payment and would loan additional [113] money on the land, said: "As the parties had examined the property they were trading for and were relying on a written

contract, we will disregard all their verbal statements and representations. Such oral statements were merged into the written agreement.'' See also Rock Island Implement Co. v. Wally, Mo. App., 268 S. W. 904, 913[18, 19]; Crossan v. Noll, Mo. App., 120 S. W. 2d 189, 191[3-6]; Scott v. Tanner, Mo. App., 208 S. W. 264, 266[6]; England v. Houser, 178 Mo. App. 70, 81 et seq., 163 S. W. 890, 893[4]; Peoples Bank of Ava v. Baker, Mo. App., 193 S. W. 632, 633[1, 4].

The fraud relied on by respondents was perpetrated to induce respondents to purchase the lots in the subdivision. This is not a ground for a court of equity to make a new contract in the place of the contract actually made. General Refractories Co. v. Sebek, 328 Mo. 1143, 44 S. W. 2d 60, 64[2]; Krick v. Thompson, 349 Mo. 488, 162 S. W. 2d 240, 245[5].

Appellant held the fee simple title to the land here involved prior to the sale of the lots. None of the lots as platted extend to the lake. They stop at the line of the parkway around the lake. So far as disclosed of record appellant conveyed to the purchasers by lot and block number and did not part with its title to the lake, roadways and parkway. The recorded plat recites that appellant ''reserves the title to all roadways, drives, parkways, pathways, and parks surrounding the lake.'' The deeds executed by appellant were expressly ''subject to the covenants and restrictions'' appearing on said plat and printed on the back of the application executed by each purchaser. The purchasers, their heirs and assigns, were given the right of user of the lake and the parkway surrounding the lake, subject, however, to rules and regulations to be prescribed by appellant. The covenants ran with the land and were binding on the grantor and grantee until January 1, 1975. To vest in respondents ''the exclusive right to use said Lake Tekakwitha Subdivision and all facilities and privileges incident thereto'' is to vary the terms of the written agreement existing between respondents and appellant. Under the authorities respondents are not entitled to such relief.

Injunction is a proper remedy to restrain the violation of restrictive covenants on land. Respondents' authorities involved the violation of written restrictions on land. Proetz v. Central District of C. & M. Alliance, Mo. App., 191 S. W. 2d 273, 274, 277; Meder v. Wilson, Mo. App., 192 S. W. 2d 606; 43 C. J. S. 580, § 87, b, (1). The instant case involves no express covenant covering the relief sought by respondents and violated by appellant. Respondents' authorities do not apply. An ''exclusive'' easement is an interest in land and, in the circumstances of record, could only be created by deed. Fuhr v. Dean, 26 Mo. 116, 120; Farmers Drainage Dist. v. Sinclair Refining Co., Mo., 255 S. W. 2d 745, 748. Furthermore, we have said injunction is not the proper method to try title to real estate between individual litigants. Mexico Refractories Co. v. Pignet's Estate, Mo., 161 S. W. 2d 417, 419[4].

The judgment and decree is reversed and the cause remanded with directions to dismiss respondents' action without prejudice. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Ellison,* P.J., *Leedy,* J., and *Dew* and *Anderson,* Special Judges, concur.