**Lewis STEIN, Plaintiff–Respondent,**

v.

**STEIN EGG AND POULTRY COMPANY, INC., a corporation, and Marshall Stein, Defendants–Appellants.**

**No. 41576.**

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 12, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Nov. 12, 1980.

5. 558.011, RSMo 1979.

Lewis, Rice, Tucker, Allen & Chubb, J. L. Pierson, Kathleen Knaup, St. Louis, for defendants appellants.

Padberg, McSweeney, Slater, Merz & Reid, Edward P. McSweeney, St. Louis, for plaintiff respondent.

WEIER, Judge.

When Lewis Stein, founder and president of Stein Egg and Poultry Company, Inc., retired from the company in March of 1975, he executed not only a stock sales agreement but also a consulting agreement which contained a covenant not to compete. Thereafter in December of 1976 he filed suit against the company to reform the consulting agreement by deleting the covenant not to compete. He also sought to permanently enjoin the company and Marshall Stein, a nephew and one of the owner-officers of the corporation, from enforcing the contract and for actual and punitive damages against the defendants. The case was tried before the court and the court determined the covenant not to compete contained in the consulting agreement was the result of a mutual mistake and it was never the intention of the parties that the plaintiff be bound thereby. The court

thereupon struck the noncompetition covenant and the enforcement clause of the contract. Although plaintiff was denied his claim for damages, the defendants were permanently enjoined from enforcing the noncompetition clause. We have concluded that the court has erred as a matter of law and that the judgment must be reversed.

Plaintiff Lewis Stein, his two brothers Harry and Eddie Stein, and his nephew Marshall Stein, each owned twenty–five percent of the stock in the defendant Stein Egg and Poultry Company, Inc., now known as Crown Foods, Inc. In January of 1975 Lewis Stein told the others that he wished to sell his interest and retire from the company. Following discussions over a period of several months, an agreement was reached on the amount the plaintiff was to receive upon leaving the company. Two documents were prepared by the attorneys who had represented the company and were submitted to the parties. One was an agreement for the sale of stock and the other was a consulting agreement whereby plaintiff was to act as a consultant when requested and receive monthly compensation for seventy–two months. The covenant not to compete was contained in the consulting agreement. When plaintiff received a copy of the proposed consulting agreement, he told Harry and Eddie Stein and the corporate comptroller Ned Riggins that he wouldn't sign any contract which included such a covenant. Thereafter on March 17 a conference was held between Eddie, Harry and Marshall Stein, Ned Riggins the comptroller, and plaintiff Lewis Stein concerning the proposed agreements. Plaintiff had read both of these contracts prior to this meeting and knew the agreement contained the covenant which he objected to at that time. Lewis made known the fact that he did not want to sign the agreement with the noncompetition clause and turned to Harry Stein suggesting that they should get it over with. According to the version of the conversation which was accepted by the court in trying the facts, Marshall then said, "I don't give an F if you open up across the street." Lewis testified that he then stated: "Harry, you heard that, Eddie you heard that, Ned you heard that, Marshall you know what this means, I can do anything, anywhere, anytime at any place." According to Lewis, Marshall nodded his head and he said, "Yes." Lewis then said, "Okay. Then I'll sign." Although the version of the conversation given by defendant Marshall Stein places a different meaning on the conversation, we accept the plaintiff's version to be true as found by the trier of fact. Before we consider the contentions of the parties on appeal, we briefly review the law with respect to reformation of an instrument.

The power of a court to reform an instrument is an extraordinary one and must be guarded with zealous care and exercised with great caution. Reformation will be granted only in a clear case of fraud or mistake. *Thornburgh v. Warson Village Corporation*, 331 S.W.2d 144, 147–148[1, 2] (Mo.App.1960). If an instrument is sought to be reformed on the grounds of mutual mistake or cancelled on the grounds of mistake or fraud, the evidence to justify either must go beyond a mere preponderance of the testimony and remove all reasonable doubt. In other words, the proof to justify such action on the part of the court must be so clear, convincing and complete as to exclude all reasonable doubt in the mind of the chancellor. *Allan v. Allan*, 364 S.W.2d 578 (Mo.1963); *Stubblefield v. Husband*, 341 Mo. 38, 106 S.W.2d 419, 423[3] (1937); *Thornburgh, supra* at 148[3].

Further, false representations as to the legal effect of an instrument are no bar to an action thereon because a party signing such an instrument is presumed to know its contents and has no right to rely on the representations of the other party as to its legal effect. *Motor Transportation Springfield v. Orval Davis Tire Co., Inc.*, 585 S.W.2d 195, 200[1] (Mo.App.1979). This general rule is subject to "two well–recognized exceptions: (1) [w]here there is a relation of trust and confidence between the parties . . .; and (2) where one party is possessed, or professes to be possessed, of a superior knowledge *of the law* and takes

advantage of the other party's ignorance *of the law* to mislead him. . . . (Emphasis added)." *Emily v. Bayne,* 371 S.W.2d 663, 668[8] (Mo.App.1963); *Motor Transportation, supra* at 200.

◼ In the case now before us, defendants' first and second points on appeal contend that Marshall Stein's representations at the conference of March 17, 1975, do not constitute fraud upon which reformation may be granted and that the trial court erred in granting reformation because it found no evidence of fraud in the inducement or fraud in the execution of the consulting agreement. On the other hand, plaintiff contends that he had a right to rely upon the oral representations of Marshall Stein, his nephew and business partner, that the restrictive covenant would not be enforced. Plaintiff thus seeks to qualify under the first exception to the general rule as expressed in *Emily, supra.* In fraud cases, however, the parties' relationship is relevant only in so far as it relates to the right to rely on the representation without investigation. *Strothcamp v. Sandy Ford Ranch, Inc.,* 440 S.W.2d 193, 196[8] (Mo. App.1969). There, the trial court's decree granted reformation of a warranty deed on the grounds of fraud because the defendant grantor had signed and exhibited a warranty deed to the plaintiff and then fraudulently substituted another deed containing a restrictive clause without notice to the plaintiff. This is far afield from the facts in the instant case where plaintiff Lewis Stein knew that the agreement contained the restrictive clause when he signed it. In addition, he was a business man with thirty years of experience. He was president of the company. He considered himself to be the one most responsible for the conduct of the business and he should have known what he was doing because of his many years experience in the operation of a growing and successful business. The record further indicated that plaintiff and defendant Marshall Stein had an adverse relationship in their business dealings rather than one of trust and confidence. It is also noteworthy that the court did not find a relationship of trust and confidence be-

tween them. Neither did it find fraud. In fact, the court made a positive finding there was no fraud. On the basis of the evidence and the findings of the court, we cannot support the court's judgment on the grounds of fraud.

◼ Defendants' third point on appeal resolves itself about the trial court's determination that a mutual mistake existed between the parties and for that reason the noncompetition clause should be stricken. In order to prevail on the issue of reformation on the grounds of a mutual mistake, it is necessary to show that the mistake was mutual, that is, as to both parties. It must be made to appear from the evidence that both have done what neither intended and that there was a prior or preceding agreement between the parties. *Allan v. Allan, supra,* 364 S.W.2d 578, 581[1] (Mo.1963); *Leimkuehler v. Shoemaker,* 329 S.W.2d 726, 730[2] (Mo.1959).

◼ There is no indication that the parties here agreed to eliminate the noncompetition clause from the consulting agreement. Plaintiff did not suggest at any time that the contract be re-written to delete the provision although a full week passed between the discussion on March 17 and the actual signing on March 24, 1975. Plaintiff testified that he understood that the consulting agreement contained the noncompetition clause when he signed it. The agreement contained clauses other than those struck by the court indicating an intention not to allow plaintiff to compete with the company. One of the paragraphs indicated that the company desired to retain the services of plaintiff and to prevent him from being availed of by its competitors and that illness, disability or incapacity would not constitute a failure of plaintiff to perform his obligations under the terms of the contract. Another clause stated that plaintiff was not expected to give his full time and efforts to the company as a consultant and that he was free to engage in any business activity of his choosing subject to the provisions of the noncompetition clause. The crux of plaintiff's position is

that an oral agreement not to enforce must prevail over the written terms of the non-competition clause. The law is clearly to the contrary. Enforcement of the provisions of a contract cannot be defeated by a mere showing that the other party gave assurances that the same would not be binding or enforced. *St. Joseph Lead Company v. Fuhrmeister*, 353 Mo. 232, 182 S.W.2d 273, 279[12] (1944); *Motor Transportation Springfield v. Orval Davis Tire Co., Inc., supra,* 585 S.W.2d 195, 200 (Mo.App. 1979).

For the reasons hereinabove set forth, the judgment below is reversed.

STEWART, P. J., and SNYDER, J., concur.