Bernard H. PINKEN, Appellant,

v.

Dan R. FRANK, Appellee.

No. 82–1495.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1983.

Decided April 12, 1983.

Lewis R. Mills, J. Reed Johnston, Jr., Audrey G. Fleissig, St. Louis, Mo., for appellant; Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., of counsel.

Martin M. Green, Gregory J. Christoffel, Clayton, Mo., for appellee; Green & Lander, Clayton, Mo., of counsel.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Bernard H. Pinken brought a diversity claim to recover payment on a promissory note executed by Dan R. Frank. Frank admitted all elements of Pinken's claim and asserted the defense of fraud in the inducement of the note. In support of his defense, Frank was permitted to present evidence that prior to execution of the note Pinken made oral representations regarding his intention not to enforce the note unless certain conditions were met. The jury returned a verdict for Frank on his fraud defense and Pinken seeks reversal of that verdict claiming: (1) the district court[1] violated the parol evidence rule in admitting evidence of Pinken's oral representations and (2) Frank failed as a matter of law to establish his fraud defense. For the reasons set forth herein, we reject Pinken's claims and affirm the jury verdict in favor of Frank.

## I. Facts

Pinken, Allen Portnoy, and Edward Schapiro were the three principal stockholders and officers in Permaneer Corporation, a corporation created as a result of a 1968 merger between Pinken's Universal Mirror and Glass Company and Portnoy Fixtures. In 1968, Permaneer made its initial stock offering to the public. In 1969 Permaneer acquired the Jerrold-Stephen Corporation, a small corporation principally owned and operated by Frank. Frank was paid 40,000 shares of unregistered Permaneer common stock for his interest in Jerrold-Stephen. After the acquisition, Permaneer hired Frank to manage one of its wholly owned subsidiaries.

In 1970, Pinken, Portnoy, and Schapiro, each of whom owned approximately 500,000 shares of Permaneer stock, asked Frank to participate in an executive stock incentive plan. Under the plan, Frank was permitted to purchase at $6.50 per share, 9,375 shares

from each of the three principal stockholders (Pinken, Portnoy and Schapiro) and O'Fallon Investment Co., a private corporation controlled by Portnoy, for a total of 37,500 shares. In return, Frank was to execute and deliver four $60,500 promissory notes, one to Pinken, one to Schapiro, one to Portnoy, and one to O'Fallon Investment Co. At trial Portnoy and Frank testified, over Pinken's objection, that the purpose behind the stock offer was to enable Frank, as a Permaneer executive, to acquire shares of Permaneer without having the responsibility of payment for the shares unless he sold the shares at a profit over and above the $6.50 per share price. As Portnoy explained at trial, the three principal stockholders wanted to use their personal shares to enrich Permaneer executives if the company did well, without requiring the executives to assume the risk of falling stock prices. Accordingly, as Portnoy and Frank testified, in three separate meetings, the three principals specifically represented to Frank that there would be no liability on the four promissory notes Frank signed to them unless Frank sold the shares at a profit. Frank testified that in reliance upon these representations, he signed stock purchase agreements with each of the principals and at the same time executed and delivered the $60,500 promissory notes to each of the principals and one to O'Fallon Investment Co. Neither the stock purchase agreements nor the promissory notes included any exculpatory provision that the notes would be enforceable only if Frank sold the shares at a profit. The notes were to mature in December, 1975.

Pinken testified at trial that he could not recall making any representations to Frank regarding the promissory note during the 1970 meetings. Pinken also testified by deposition that from the time Frank executed the note he, Pinken, had always considered the note fully enforceable regardless of whether Frank sold any shares. At trial, however, Pinken conceded that he made no demand for payment on the note until he brought suit in 1981, some six years after the note matured.

1. The Honorable James E. Meredith, Senior District Judge, Eastern District of Missouri.

Frank never sold any of the shares he received under the stock purchase agreement and has not seen the shares since 1970 when he pledged them back to the principals. Between 1972 and 1974, Frank left Permaneer and received written releases on the promissory notes he had signed to Portnoy, Schapiro, and O'Fallon Investment Co.[2] On several occasions between 1973 and 1976, Frank unsuccessfully sought a release from Pinken on the note. Frank testified that between 1972 and 1974 he received specific assurances from Pinken that the note would not be enforced.

In 1981, Pinken filed suit in federal district court seeking to enforce the promissory note and Frank successfully defended on the ground that he was fraudulently induced to execute the note based on Pinken's misrepresentation that the note would not be enforced unless Frank sold the shares at a profit.

## II. Parol Evidence Rule

 Pinken first contends that the district court violated the parol evidence rule in admitting evidence of his oral representations that he would not enforce the note unless Frank sold the shares at a profit. The parol evidence rule, adopted and consistently followed by Missouri courts,[3] precludes the admission of oral representations made prior to or contemporaneously with the execution of a written contract. *Bellows v. Porter,* 201 F.2d 429, 432 (8th Cir. 1953), *cited with approval in Biggs v. Moll,* 463 S.W.2d 881, 887 (Mo.1971). *See also, Smith v. Tracy,* 372 S.W.2d 925, 937–38 (Mo.1963). However, there is a well established exception to that rule where, as here, a claim of fraud in the inducement is made. Missouri courts have uniformly held that parol evidence is fully admissible to support a claim of fraudulent inducement. *Smith v. Tracy,* 372 S.W.2d at 938; *Wallach v. Joseph,* 420 S.W.2d 289, 294–95 (Mo.), *cert. denied sub nom., Freidmen v. Wallach,* 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362

(1967); *Countess v. Strunk,* 630 S.W.2d 246, 254 (Mo.App.1982).

Pinken, however, contends that the fraud exception is limited to cases where the oral representation relates to a matter "extrinsic" to the express terms of the contract; an oral representation contradicting an express term in the contract is inadmissible for any purpose, even to show fraud in the inducement. In this case, Pinken's oral representation that he would enforce the note only if Frank sold the shares at a profit presumably contradicted an express term in the note providing that Frank had an unconditional obligation to pay the note when due. Thus, Pinken concludes, that oral representation is inadmissible to prove that he fraudulently induced Frank to sign the note.

Pinken principally relies on specific language in *Dowd v. Lakes Sites, Inc.,* 365 Mo. 83, 276 S.W.2d 108, 112 (Mo.1955), where the court stated: "parol testimony establishing fraud in the procurement of a written contract 'cannot be legally used to control or vary the terms of such agreement.'" Pinken also relies on similar language in *Rigler v. Reid,* 186 Mo.App. 111, 171 S.W. 952, 955 (Mo.App.1915) to the effect that evidence of an oral representation contradicting an express term of a written contract is inadmissible to support a claim of fraudulent inducement.

 Pinken's reliance on *Dowd* is misplaced and his argument is both specious and at odds with controlling Missouri case law. In *Dowd,* the court was presented with a reformation of contract claim in which the plaintiff offered evidence of oral representations that contradicted and varied the express terms of the written contract. The court refrained from exercising its equitable power to make a new contract for the parties based upon the proffered oral representations. In so doing, the court clearly distinguished cases where an oral representation is offered to vary or reform

---

**2.** Four other Permaneer employees received similar releases from liability on their notes.

**3.** The parol evidence rule is one of substantive law. *See, Bellows v. Porter,* 201 F.2d 429, 432 (8th Cir.1953). The parties in this case agree that the law of Missouri is controlling.

a written contract from cases like the instant one where an oral representation is offered in support of a fraud defense to defeat or invalidate the enforceability of the written contract. *Id.* at 112.[4] In fact, the quotation from *Dowd* relied upon by Pinken is but part of a longer passage from Corpus Juris Secundum which states:

> Parol evidence admitted and admissible only for the purpose of proving fraud in a written instrument cannot be legally used to control or vary the terms of such agreement, that is to say, if the evidence is insufficient to defeat the instrument, it cannot be considered for any other purpose. Thus the evidence must tend to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing.

32A C.J.S. *Evidence* § 979e. p. 483–84 (1964) (citations omitted). Here, Pinken's oral representation was offered to invalidate or defeat, not to vary or reform, the written contract. Furthermore, it tended to establish "fraud in the procurement of the instrument." Finally, it went to proving an "extrinsic" or "independent" fact— i.e., Pinken's state of mind when the note was executed.[5] Thus, Pinken's position is not supported by the language in *Dowd.*

■ Moreover, despite Pinken's reading of *Dowd* and *Rigler* to the contrary, Missouri courts have consistently admitted parol statements inconsistent with the express terms of a written contract to establish a fraudulent inducement claim. *Wallach v. Joseph,* 420 S.W.2d at 294–95; *Smith v. Tracy,* 372 S.W.2d 925, 937 (Mo.1963); *Wolf*

*v. St. Louis Public Service Company,* 357 S.W.2d 950, 959 (Mo.App.1962); *Forsythe v. Starnes,* 554 S.W.2d 100, 110–11 (Mo.App. 1977); *Employers' Indemnity Corporation v. Garrett,* 327 Mo. 874, 38 S.W.2d 1049, 1053–54 (Mo.1931). Similarly, the fraudulent inducement exception to the parol evidence rule is not rendered inapplicable by a contract merger provision that all agreements between the parties are contained therein or a provision that no verbal agreement affecting the validity of the written contract will be recognized. *National Theatre Supply Co. v. Rigney,* 130 S.W.2d 258, 261–62 (Mo.App.1939).

The policy underlying these Missouri cases seems well established: there should be broad latitude in admitting evidence to establish fraud in the inducement; the parol evidence rule was designed to prevent frauds, not to promote frauds by immunizing a party from claims arising out of his fraudulent misrepresentations. *See* 32A C.J.S. *Evidence* § 979a. p. 475. It would be indeed ironic if this court were to blindly apply a fraud preventing doctrine—the parol evidence rule—where the effect would be to permit Pinken to enforce an agreement as written when he has orally agreed not to do so and Frank has relied upon that oral agreement to his detriment. *Id.; see also* Dobbs, *Remedies,* 642–44 (1973). Furthermore, Pinken's posture here is no different from that of a party who attempts to cloak his fraudulent misrepresentations by including in the written agreement a merger provision that no inconsistent verbal agreements will be recognized. *Compare National Theatre Supply Co. v. Rigney,* 130 S.W.2d 258, 261–62. In both cases, the specious claim is made that an express term of a contract establishes an impenetrable bar-

---

4. The court in *Dowd* quoted from 32 C.J.S. *Evidence* § 979a. p. 942 (now at 32A C.J.S. *Evidence* § 979a. p. 467 (1964), which states:
 Generally, the parol evidence rule has no application where there has been fraud, except under unusual circumstances, and it is well established that, as fraud vitiates everything which it touches, parol evidence is always admissible to show, for the purpose of invalidating a written instrument, that its execution was procured by fraud, or that, by reason of fraud, it does not express the true

intentions of the parties. The defense of fraud may be established by parol, not to contradict or deny, but to destroy the effect of the instrument. (citations omitted)

5. Missouri courts have consistently held that a "state of mind" is an independent, existing fact, the misrepresentation of which may constitute actionable fraud. *Wallach v. Joseph,* 420 S.W.2d at 294–95; *White v. Mulvania,* 575 S.W.2d 184, 188 (Mo. banc 1978).

**1024**

rier to the admission of fraudulent oral misrepresentations. *See* Dobbs, *Remedies,* 644.

■ Finally, contrary to Pinken's draconian predictions, applying the fraudulent inducement exception here will not destroy the parol evidence rule by opening the door to frivolous claims to defeat the terms of a written agreement. As in any fraud case, the defrauded party must prove his fraudulent inducement defense by clear and convincing evidence in order to defeat the written contract. *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 634 (Mo.App.1980). The evidence of fraud here is not only overwhelming, it is conclusive. We simply cannot accept the proposition that the parol evidence rule was designed to foreclose a showing of fraud by preventing the admission of oral misrepresentations contradicting the terms of a written contract.[6]

### III. *Sufficiency of the Evidence*

#### A. *Justifiable Reliance*

■ Pinken contends that Frank failed, as a matter of law, to produce sufficient evidence to support a jury finding that Frank justifiably relied on Pinken's oral representations. Generally, whether a party has justifiably relied upon a misrepresentation is an issue of fact for the jury to decide. *Monsanto Chemical Works v. American Zinc, Lead & Smelting Co.,* 253 S.W. 1006, 1010 (Mo.1923); *see also* 37 C.J.S. *Fraud* § 129, p. 455·(1943). However, Pinken claims that a party to a contract may not, as a matter of law, justifiably rely on the representation of the other party that the written agreement will not be en-

forced according to its terms. Pinken's argument here, like his parol evidence claim, is hinged on the assumption that an oral representation, whether fraudulently made or not, that contradicts the express terms of a written contract has no legal effect.[7]

Pinken primarily relies on *Stein v. Stein Egg & Poultry,* 606 S.W.2d 203 (Mo.App. 1980). In *Stein,* the plaintiff, upon his retirement from the company he operated and jointly owned with three partners, entered into a stock sale agreement and a consulting agreement with his partners whereby plaintiff was to act as a consultant and receive monthly compensation for seventy-two months. The consulting agreement contained a non-competition covenant. During negotiations prior to the execution of the agreement, the plaintiff vigorously objected to the non-competition covenant and initially refused to sign the written agreement if the covenant remained part of the agreement. At trial, plaintiff testified that he nevertheless signed the agreement including the covenant based upon the oral representation of one of his three co-partners that the non-competition clause would not be binding or enforced. Despite a positive finding of no fraud in the inducement of the signed contract, the trial court credited plaintiff's testimony regarding the partner's oral representation and reformed the contract by striking the non-competition covenant.

The Missouri Court of Appeals reversed, holding that the trial court erred as a matter of law in reforming the instrument. The court concluded that the enforcement of a contract provision cannot be defeated

---

**6.** We believe the case before us is distinguishable from *Rigler v. Reid,* 186 Mo.App. 111, 171 S.W. 952 (Mo.App.1915), where the defendant sought rescission of a note on the basis of an oral agreement to add an option to cancel the transaction. The court held that parol evidence was inadmissible for the purpose of establishing the oral agreement. In so doing, however, the court found that the defendant had condoned and ratified a previous transaction that had allegedly been tainted by the fraudulent misrepresentation. Moreover, in *Rigler,* unlike here, the only evidence that the oral representations were even made was the de-

fendant's own testimony. Nevertheless, any dicta in *Rigler* that parol evidence is inadmissible to show fraud in the inducement of the note has been superseded by subsequent Missouri Supreme Court cases to the contrary. *See Wallach v. Joseph,* 420 S.W.2d at 294–95, and cases cited therein. Also, *See Wolf v. St. Louis Public Service Company,* 357 S.W.2d 950, 959 (Mo.App.1962).

**7.** Pinken concedes for purposes of this appeal that he made the oral representation that the note was unenforceable unless Frank sold the shares at a profit.

by a mere showing that the other party gave assurances that the contract provision would not be binding or enforced. *Id.* at 207. The court in dicta said that a party to a written contract has "no right to rely on the representations of the other party as to its legal effect," except where "there is a relation of trust or confidence between the parties" or where one party possesses superior knowledge of the law. *Id.* at 205. The court went on to emphasize that there was no finding of fraud in the inducement and that the parties had an adversary relationship in their business dealings rather than a relationship of trust and confidence. *Id.* at 206.

■ We believe *Stein* is inapposite and does not control the present case. First and most important, here, unlike in *Stein,* there was a specific finding of fraud in the inducement, supported by clear and convincing evidence. The court in *Stein,* alluding to the trial court's finding of no fraud, emphasized that the only support for plaintiff's reformation claim was his own testimony that he relied upon one of his fellow partner's oral representation that the covenant would not be enforced. By contrast, here the jury's fraud finding, which necessarily included a finding of Frank's justifiable reliance, was supported not merely by Frank's testimony that he relied upon Pinken's representation, but also by Portnoy's testimony regarding the purpose of the executive stock incentive plan, the specific oral representations made by each of the three principals not to enforce the notes unless the stock was sold at a profit, and the written releases Frank received on the notes given to Portnoy, Schapiro, and O'Fallon Investment Co. We have little doubt that the *Stein* court would have reached a different decision had the plaintiff there provided the clear and convincing evidence of fraudulent inducement that Frank has presented here.

■ Furthermore, the *Stein* court emphasized that its decision was based on a finding that the parties had an adversary relationship rather than one of trust or confidence. *Id.* at 206. In fact, the plaintiff in *Stein* actively negotiated with his business counterparts and received monetary consideration in exchange for the covenant not to compete. By contrast, here the evidence shows Frank, a minority shareholder and employee of Permaneer, was called in by the three principal stockholder/officers and asked to participate in an employee stock incentive plan. Frank neither initiated any negotiations nor had any particular incentive to incur the additional obligation associated with an outright purchase of the stock. The testimony of Portnoy also reveals that the three principals, including Pinken, repeatedly assured Frank that the purpose of the incentive stock offer was to reward their employees if the company did well without forcing the employees to incur any additional financial obligations. In view of the employee-employer relationship, Frank's minority stockholder status, the circumstances surrounding the incentive stock offer, and the repeated assurances given by each of the principals, we conclude that Frank reasonably and justifiably believed that a relationship of trust or confidence existed between the parties. Thus, this case falls squarely within the exception enunciated in *Stein,* which permits a party to justifiably rely on the oral representations of another party with whom a relationship of trust or confidence exists.

■ Finally, if we were to adopt Pinken's rigid interpretation of *Stein*—that a party can never justifiably rely on an oral representation that contradicts the written agreement—we would do so at the risk of emasculating the well established fraudulent inducement defense to the enforcement of a contract. We agree with Pinken that, generally, a person who signs a written contract is presumed to know the contents of the terms of the contract and is bound by such terms. *See Wallach v. Joseph,* 420 S.W.2d at 294. However, we do not believe that under Missouri law a party is free to fraudulently induce the other party to sign an agreement simply because the relied upon fraudulent misrepresentations were inconsistent with the signed agreement.

*Id.* at 294; *Stein,* 606 S.W.2d at 206. In this regard, we note that "[t]he trend in modern [Missouri] decisions is to require less diligence, rather than more, in the person to whom representations are made, and to condemn the falsehood of the person making the representation, rather than the credulity of the victim." *Cantrell v. Superior Loan Corp.,* 603 S.W.2d 627, 637 (Mo.App. 1980).

### IV. *Intent to Deceive or Induce Reliance*

Pinken finally contends that there was insufficient evidence to show that his oral representation not to enforce the notes was a false representation of an "existing fact" made with the intent to deceive Frank or to induce Frank's reliance.

■ Pinken preliminarily contends that his representation not to enforce the note unless the shares were sold at a profit was merely a promise as to a future event, not a misrepresentation of an "existing fact." This argument need not detain us because Missouri courts have consistently held that a misrepresentation of state of mind, or intent, is itself a misrepresentation of an "existing fact" upon which an actionable fraud claim may be based. *White v. Mulvania,* 575 S.W.2d 184, 188 (Mo. banc 1978); *Wallach v. Joseph,* 420 S.W.2d 289, 295 (1967). Here, the record shows that Pinken's oral representations were offered for the purpose of showing that Pinken was misrepresenting his "state of mind" or "intent" when he said that he would not enforce the notes unless the shares were sold at a profit.

■ Pinken next contends that Frank did not offer sufficient evidence that the oral representations were false when made and were made with the intent to deceive Frank. We disagree. Although the existence of fraudulent intent is never to be presumed, it may be inferred where a party knowingly misstates a material fact, knowing that the party to whom it is made will rely upon it. *See Burch v. Schmelig,*

300 S.W.2d 838, 844 (Mo.App.1957); *Cantrell,* 603 S.W.2d at 635 (Mo.App.1980). In this case the jury could have reasonably inferred that Pinken made a false misrepresentation with the intent to deceive Frank based upon the following evidence. First, the evidence showed, and Pinken concedes on appeal, that prior to execution of the note Pinken made oral representations to Frank that the note would not be enforced unless Frank sold the shares at a profit.[8] Second, Frank testified that after receiving written releases on the notes given to Portnoy and Schapiro, he unsuccessfully sought a similar release from Pinken, who assured Frank that he need not concern himself with payment on the note. Third, Pinken admitted in his deposition that from the time the note was executed he had always considered it fully enforceable regardless of whether Frank sold any shares. From this the jury could reasonably infer that at the time of Pinken's assurances concerning nonenforcement of the note, his true state of mind was antithetical to these assurances and that he intended to deceive Frank concerning his obligations on the note.

Judgment affirmed.

---

8. At trial, Pinken testified that he could not recall making any specific representations regarding the enforcement of the note. Portnoy and Frank testified that such oral representa-tions were made. The releases obtained on the notes given to Portnoy and Schapiro also support a finding that such oral representations were made.