Marci F. LINK, Appellant,

v.

E. Stanley KROENKE, d/b/a Biscayne Mall, Respondent.

Marci LINK, Respondent,

v.

E. Stanley KROENKE, d/b/a Biscayne Mall, Appellant.

Nos. WD 50585, WD 50619.

Missouri Court of Appeals, Western District.

Oct. 31, 1995.

Thomas Michael Schneider, Columbia, for Appellant/Respondent.

Thomas M. Harrison, Columbia, for Respondent/Appellant.

Before FENNER, C.J., P.J., BERREY, J., and TURNAGE, Senior Judge.

FENNER, Chief Judge.

Marci Link appeals from the judgment of the Circuit Court of Boone County in a court-tried case denying her claims of fraud, estoppel, and waiver and granting the counterclaim of respondent for damages due pursuant to default by appellant. Respondent cross-appeals the trial court's failure to grant respondent's claim for attorney's fees associated with this action.

This case arises from a lease arrangement in which respondent served as the commercial landlord and appellant the commercial tenant. Appellant and her husband, Bill Link, now deceased, rented a 3,400 square foot retail space from the owner of the Biscayne Mall Shopping Center in 1984, in which the Links operated a business known as the West Side Laundry. The 1984 lease was for a period of five years and provided that appellant was to pay rent in the amount of $2,040.00 per month during the last two years of the lease along with 1.27% of the real estate taxes and common area maintenance ("CAM") charges incurred for the Biscayne Mall, together defined as "additional rent," as the square footage of appellant's retail space equaled 1.27% of the square footage of the entire shopping center. The 1984 lease contained an option to renew the lease for an additional five year term.

Appellant and her husband were contacted by Norman Morris, a leasing agent for the mall owner, in February 1989 in order to initiate negotiations on a new lease for the West Side Laundry premises. Appellant met with her husband and Morris on one occasion, June 6, 1989, to discuss the new lease.

Prior to this meeting, appellant had been provided a copy of the proposed new lease, which stated the base rent was to remain $2,040.00 per month. The new lease also defined real estate taxes and CAM charges as "additional rent."

Appellant claims that Morris stated there would be "no increase in rents" under the new lease, and that she interpreted that to mean that their minimum rent would stay the same, as well as would all additional rents including CAM charges and real estate taxes. Additionally, appellant acknowledges that they discussed the new CAM formula contained in the proposed lease language [1] separately from discussions regarding base rent, having apparently requested that some of the language be changed. Morris informed appellant that he could not make changes and that the legal department would have to consider any changes. Appellant claims Morris represented that the CAM charges would, in essence, be the same as under the 1984 lease and, therefore, she assumed the "less majors" provision in the new lease would be a wash. Appellant claimed she would not have signed the new lease if she knew her real estate taxes and CAM charges were going to increase.

The testimony of Morris is consistent in that he states he did not have complete authority to enter into transactions for the company which owned the mall, and that he informed appellant and her husband of his limited authority and that he could not negotiate regarding business terms and language. Testifying based on some handwritten notes from the meeting, Morris stated that he told the Links that the rent would be the same under the new lease as it was in the old, but that he separately explained the method for calculating appellant's share of the CAM charges under the new lease. Morris claims to have used the term "rent" to refer to base rent only, though he did not specifically exclude CAM charges and real estate taxes from his use of the term "rent" in his conversation with the Links. Morris claims appellant and her husband did not ask any questions about the language dealing with CAM charges and that he did not inform them that

---

1. The 1989 lease employed a "less majors" formula for computing real estate tax and CAM charges. This language dropped the "major" stores at the Mall, such as Wal–Mart and Montgomery Ward, out of the base formula for computing taxes and CAM charges. The "majors" paid such fees, often in flat monthly or yearly amounts, based on terms in their own leases. This fixed sum was often less than what the pro rata share for each major would be under the formula in the old lease.

the dollar amount of CAM charges or taxes would change under the new lease.

At trial, both appellant and Morris testified that neither appellant nor her husband took any action or made any inquiry to determine the extent of Morris' authority in his capacity as a leasing agent, or the limits thereof. Further, appellant testified Morris made her aware of his limited authority. Appellant and her husband signed the new lease in August or September 1989.

The "less majors" clause had a considerable effect on the amount of CAM charges paid by appellant, increasing them considerably.[2] On August 7, 1990, Westside Acquisition Corporation, of which respondent was president, purchased the Biscayne Mall from Sunny Mead Limited Partnership. As president of Westside Acquisition, respondent Kroenke assigned appellant's lease to himself individually on the same date. The following representation appeared in the assignment:

> There are no defaults now existing under the Lease and that there exists no state of facts which, with the giving of notice or lapse of time, or both, would constitute a default under the Lease.

Appellant claimed, and respondent does not deny, that the dispute concerning the proper amounts payable under the lease had arisen and was known 10 months prior to the lease assignment.

Appellant filed her Petition for Declaratory Judgment, Permanent Injunction, and Reformation on July 20, 1992, based on the alleged negligent, reckless, or intentional misrepresentations of Morris regarding CAM charges under the new lease. Respondent, in his answer, made a proper counterclaim for damages due to the alleged default of appellant under the lease. Respondent also sought to recover his attorney's fees associated with the collection of unpaid sums under the lease based on the terms of the lease.

The matter was tried to the court on September 1, 1994, which resulted in the court finding that appellant had no right to rely on the alleged representations of Morris, that appellant had proven no mutual mistake, that appellant failed to prove the elements of fraud, that respondent was not estopped from taking the position he took at trial and that he did not waive his right to pursue appellant for the unpaid common rent, that appellant breached the lease and owed respondent damages for such breach. The trial court denied respondent's claim for attorney's fees. This appeal followed.

## I. STANDARD OF REVIEW

 This matter was tried before a trial court sitting without a jury. In such cases, the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should set aside a decree on the ground that it is "against the weight of the evidence" with caution and only upon a firm belief that the decree or judgment is wrong. *Id.* Appellant asserts that the trial court erroneously applied the law to her claims.

## II. APPARENT AGENCY AND FRAUD

Appellant claims that the trial court "missed the crux of her claim" stating that she does not claim she was entitled to have Morris change the wording of the lease, which she knew could not be done; instead, her complaint is that she was led to believe by the leasing agent's statement that although the wording of the CAM charge and real estate tax sections in the new lease had changed, there would be no increase in those components of "additional rent" when Morris stated there would be no "increase in rents." In either scenario, appellant's claim is essentially that Morris told her something which is inconsistent with the language of the lease and that she was entitled to rely on Morris' statements.

The dispute between the parties boils down to the use of the term "rent" by Morris

---

2. The exhibits filed by appellant indicate that in one year, appellant paid more in CAM charges than did Wal–Mart, which rented more than 80,- 000 square feet, or more than 20 times the square footage of appellant's business, for its business.

at the June 6, 1989, meeting with appellant. When he allegedly represented that there would be no "increase in rents," appellant claims she understood him to mean there would be no increase in base rent, CAM charges, or real estate taxes. Obviously, respondent claims the terms of the lease clearly deal with rent, CAM charges, and real estate taxes separately.

■ Appellant contends that she was entitled to have the court reform the lease to enforce her construction of the term "rents" as used by Morris because of the apparent authority of Morris to bind the prior owner of Biscayne Mall, a predecessor of respondent, to his statements during negotiation of the new lease. Apparent authority is authority which a *principal*, by its acts or representations, has led third persons to believe has been conferred upon an agent; such authority does not arise if the third person does not act in belief that the agent possesses authority to act on the principal's behalf. *United Missouri Bank, N.A. v. Beard,* 877 S.W.2d 237, 240 (Mo.App.1994). Apparent authority differs from actual authority in that the principal communicates directly to the third person to establish apparent authority while to create actual authority, the principal communicates with the agent. *Hamilton Hauling, Inc. v. GAF Corp.,* 719 S.W.2d 841, 846 (Mo. App.1986). Because apparent authority arises from the acts of the principal, not the acts of the agent, it cannot be based upon an ostensible agent's unauthorized claims of authority. *United Missouri Bank,* 877 S.W.2d at 241.

■ To establish the apparent authority of a purported agent, appellant must show that (1) the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority; (2) the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority; and (3) the person relying on the appearance of authority changed his position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal. *Earl v. St.*

*Louis Univ.,* 875 S.W.2d 234, 238 (Mo.App. 1994).

■ It should be emphasized that the third party must reasonably rely on the authority held out by the principal. *Hamilton Hauling,* 719 S.W.2d at 846. The third party must actually believe the agent is authorized. *Id.* A person dealing with a supposed agent has a duty to ascertain for themselves the fact and scope of agency and must display that degree of common sense which distinguishes good faith from blind faith. *Stram v. Miller,* 663 S.W.2d 269, 275 (Mo.App.1983).

■ Appellant has not established the apparent authority of Morris to alter the rent, CAM, and real estate tax terms of the lease agreement through his statements at the June 6, 1989 meeting. This is especially true in light of appellant's admission that Morris clearly stated he could not alter the definitions of the terms within the lease. The principal at the time, the owner of the shopping center who retained the management company of which Morris was an employee to lease the premises, took no action inconsistent with Morris' statements of his limited authority prior to or after his meeting with appellant. Any reliance by appellant on Morris' statements regarding the interpretation of terms within the lease was unreasonable.

■ Further, if appellant questioned the definition of terms within the lease and the consistency of Morris' statements with those terms, she had a duty to ascertain the fact and scope of Morris' agency, and could not rely on blind faith in the alleged representations of Morris. Appellant was in possession of the proposed lease for a considerable amount of time prior to signing it, giving her sufficient opportunity to ascertain the scope of appellant's agency.

■ Finally, even if apparent authority was conferred upon Morris such that appellant was entitled to reasonably rely on his statements as she construed them, appellant seeks reformation of the subject lease as her remedy. Reformation is an extraordinary remedy and should be granted only with great caution and in clear cases of fraud or mistake. *Stein v. Stein Egg & Poultry Co.,*

*Inc.*, 606 S.W.2d 203, 205 (Mo.App.1980). Appellant has not alleged a mutual mistake. The elements of fraudulent misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of its truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Clark v. Olson*, 726 S.W.2d 718, 719 (Mo. banc 1987).

As stated earlier, we do not believe appellant, the hearer, had a right to rely upon the statements of Morris. However, even if she did have such a right, appellant cannot establish from the evidence before us that Morris, the speaker, knew of the purported falsity of his statement. Appellant's claim of fraudulent misrepresentation based on the apparent authority of Morris fails.

## III. *ESTOPPEL AND WAIVER*

Appellant claims that respondent is estopped from asserting any claim for the disputed CAM charges and real estate taxes, or that respondent waived the right to make any such claim, due to the "no defaults" clause in the assignment of the lease in question from Westside Acquisition to respondent. Appellant claims that because the clause states that there were no defaults existing under the lease and that no state of facts existed which could constitute a default upon the giving of notice or lapse of time, and that this was not the case as the dispute regarding the CAM charges and real estate taxes was known and had arisen 10 months prior to the assignment of the lease, respondent is estopped from making any claim for the disputed charges.

■ Estoppel is not a favorite of the law and will not be lightly invoked; it is applied with care and caution and only when all elements constituting estoppel are clearly established. *State ex rel. Sprouse v. Carroll County Comm'n*, 889 S.W.2d 907, 911 (Mo. App.1994). Estoppel requires (1) an admis-

sion, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Id.* Appellant must have acted or pursued some course of conduct with knowledge of the facts and her rights and her conduct must be viewed in light of the understanding she had of her rights at the time she acted, and not in light of what she later learned with regard to the terms of the lease. *See Id.* A party cannot set up another's act or conduct as the ground of an estoppel unless he or she has been misled or deceived by such act or conduct. *Id.*

■ We believe it is clear that appellant cannot satisfy the second requirement of estoppel, an action on her part on the faith of the admission, statement, or act of respondent. Appellant did not withhold payment of CAM charges and real estate taxes based on the "no defaults" clause in the assignment of the lease, either before or after the assignment took place. The record reveals that appellant was unaware of the "no defaults" clause in the lease until after commencement of this lawsuit. Consequently, appellant's argument that respondent is estopped from making a claim for past due CAM charges and real estate taxes under the lease fails.

■ A waiver is the intentional relinquishment of a known right. *Howe v. Lever Bros. Co.*, 851 S.W.2d 769, 775 (Mo.App. 1993). If waiver is to be implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right. *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 386–87 (Mo. banc 1989). Waiver differs from estoppel in that waiver involves the act, conduct, or statement of one of the parties to the contract only, waiver involves both knowledge and intent while estoppel does not always require an intent to mislead, and a waiver does not require one to be misled to his or her prejudice or into an altered position. *Id.* (*quoting Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 102 A.2d 326, 330 (1954)).

■ The "no defaults" clause in the lease assignment clearly states that no defaults exist under the lease at the time of the assignment and that there exists no state of facts which would constitute a default upon the giving of notice or lapse of time. While this language does not specifically state that respondent "waives his right to make a claim for any default," it does state that no defaults exist under the lease at a time when the parties were aware of the disputed CAM charges and real estate taxes.

We believe the language of the "no defaults" clause is sufficiently specific to effect a waiver of all claims for past due CAM charges and real estate taxes at the time of the execution of the assignment of the lease on August 7, 1990. The trial court erred in finding appellant liable for CAM charges and real estate taxes that became due prior to the execution of assignment of the lease.

The "no defaults" clause in the assignment of the lease does not, however, effect a waiver of respondent's claims to CAM charges and real estate taxes that became due after its execution. Respondent's claims for those unpaid amounts are valid and the trial court's judgment respecting those claims will not be disturbed.

## IV. ATTORNEY'S FEES

■ Respondent's cross-appeal alleges that the trial court erred in not entering judgment for respondent for his attorney's fees incurred in this action pursuant to terms of the lease agreement contemplating and providing that respondent would be entitled to collect attorney's fees and other related costs and expenses from appellant. Respondent's argument is based on the following clause in the lease:

If Landlord pays any monies or incurs any expense to correct a breach of this Lease by Tenant or to do anything in this Lease required to be done by Tenant, or incurs any expense as a result of Tenant's failure to perform any of Tenant's obligations under this Lease, including, but not limited to, attorney's fees and court costs, all amounts so paid or incurred shall, on notice to Tenant, be considered additional rent payable by Tenant with the First Minimum Monthly Rent installment thereafter becoming due and payable, and may

be collected as by law provided in the case of rent.

■ Absent statutory authority or contractual agreement, each litigant, with few exceptions, must bear the expense of his or her own attorney's fees. *Liberty v. Beard,* 636 S.W.2d 330, 331 (Mo. banc 1982). A trial court has broad discretion in awarding attorney's fees, and an award will be disturbed on appeal only upon a showing that the trial court abused that discretion. *Tice v. Tice,* 872 S.W.2d 148, 150 (Mo.App.1994). The setting of any such fee is also within the discretion of the court and should not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration. *In Interest of J.D.B.,* 836 S.W.2d 520, 521 (Mo.App.1992).

The record reflects that the trial court declined to grant respondent's request for attorney's fees. This total lack of award of attorney's fees is contrary to the clear terms of the lease and thus an abuse of discretion by the trial court.

The judgment of the trial court as it pertains to appellant's claims of apparent authority, fraud, and estoppel is affirmed. We reverse the judgment of the trial court on the issue of waiver, finding that the "no defaults" clause in the assignment of the lease operated to waive respondent's right to claim any CAM charges and real estate taxes that were due and unpaid at the time of the assignment. Respondent's claims arising after August 7, 1990, are valid and the trial court's judgment granting respondent's claims for damages due pursuant to default arising after that date is affirmed. We also reverse the judgment of the court denying an award of attorney's fees to respondent. This cause is remanded for the trial court to modify its judgment to find that the "no defaults" clause effected a waiver of all claims for past due CAM charges and real estate taxes prior to August 7, 1990, and to determine an appropriate award of attorney's fees.

All concur.