Wendell WELBERN, Jr., Appellee,

v.

Dennis HUNT, individually and in his official capacity as City Administrator of the City of Fort Smith; Bob Wright, individually and in his official capacity as Director of Operations of the City of Fort Smith; Charles Angel, individually and in his official capacity as Personnel Director of the City of Fort Smith; David Beckman, Ed Gross, Ray Stewart, William Shell, Bill Maddox, and Alan Langdon, individually and in their official capacities as City Directors of the City of Fort Smith; William D. Vinces, individually and in his official capacity as Mayor of Fort Smith; Appellants.

No. 88–2005.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1989.

Decided May 9, 1989.

Jerry L. Canfield, Fort Smith, Ark., for appellants.

Philip E. Kaplan, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, and ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Wendell Welbern lost his job as Assistant Director of Operations for the City of Fort Smith, Arkansas, when administrators for the City decided to eliminate his job position in 1986. Welbern claims that a

municipal ordinance guaranteed him placement in some other job in his department, and that the named City administrators violated his Fourteenth Amendment right to due process by terminating him without a hearing on his claim to another job. The District Court[1] found for Welbern, and ordered his reinstatement with full back pay dating from his termination. We affirm the District Court's finding of liability, but we reverse the back-pay award and remand for further proceedings.

## I.

The parties stipulated to all facts material to this dispute. According to their stipulation, Welbern began working for the City in 1970 as a draftsman in the Public Works Department. After successive promotions over the years, Welbern was transferred in January 1985 to the newly created position of Assistant Director of the Operations Department, which manages the street and traffic-control facilities of the City. Together with the Director of Operations, Welbern was responsible for the work of four supervisors, who in turn directed the work of an unspecified number of subordinate employees.

In November 1985, the City hired a new Director of Operations, Bob Wright. In reviewing the Department's organizational chart, Wright concluded that the Department did not need both a Director and an Assistant Director to manage only four supervisors. At Wright's suggestion, Acting City Administrator Dennis Hunt decided on January 10, 1986 to discontinue the position of Assistant Director of Operations, and terminated Welbern's employment effective March 7, 1986.

At the time of his termination, Welbern had greater seniority than some other employees in the Operations Department. The City stipulates that Welbern was qualified to perform at least some of the Department's remaining positions. The City did not, however, offer Welbern another job in the Operations Department. In the three months before his termination, Welbern applied unsuccessfully for several jobs in other City departments, although he did not apply for the positions of laborer and dispatcher which were open at that time in the Operations Department.

## II.

To obtain relief under the Due Process Clause, Welbern must show that he has been deprived of a property interest in his job.[2] This property interest may be established by an ordinary contract, or by "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment...." *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed. 2d 570 (1972). The critical issue in this case is whether Ordinance 3715 of the City of Fort Smith gave Welbern such a property interest.

Section II(E) of Ordinance 3715 provides as follows:

In the event of a layoff or reduction in the work force in any department, probationary employees shall first be laid off; if any further reduction in force is necessary, the employee in that department with the least seniority shall be laid off, provided that the remaining employees in the department have the ability to perform the remaining available work with normal efficiency and without further training.

1. The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

2. He must also, of course, show that any deprivation was without due process. That element of the claim is in no real dispute here. Welbern got no process at all. He should at least have been given a chance to show that there were other jobs in his Department that he could do, and that these jobs were held by persons with less seniority than his. He was never given this chance. There is no point in requiring that such process be afforded now, because the City, after suit was filed, stipulated to the very facts that Welbern would have needed to prove at an administrative hearing. For this reason, the only real issue in the case, so far as liability is concerned, is whether Welbern had a property interest. This depends in turn on an interpretation of the Ordinance.

As the parties presented the question, the District Court had to decide whether the phrase "layoff or reduction in the work force in any department" described the City's decision to eliminate the position of Assistant Director in the Operations Department. The District Court acknowledged that "... the ordinance does not mention the situation where a particular position or job is eliminated." *Welbern v. Hunt,* Civ. No. 87–2050 (W.D.Ark. April 21, 1988) slip op. at 7. The Court held, however, that Welbern had a legally conferred "expectancy to continued employment in accordance with the seniority standard outlined" in Ordinance 3715, and concluded that this seniority right protected Welbern from complete termination even when the City decided to eliminate his position. *Id.* Slip op. at 8.

On appeal, the City argues vigorously that the elimination of Welbern's position cannot be a "layoff or reduction in force" within the meaning of the Ordinance, and urges us to reverse the District Court's interpretation of state law. This is not something we are normally disposed to do. For many reasons, district courts are inherently more reliable interpreters of the laws of the states in which they operate than the more removed courts of appeals. In reviewing determinations of state law, we defer to the District Court's view "where there is not strong argument that such choice of law is fundamentally deficient in analysis or otherwise lacking in reasoned authority." *Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981). In this case, the City does not present a sufficiently compelling reason to overrule the District Court's interpretation. The City's main objection to the District Court's interpretation of the phrase "layoff or reduction in force" in Ordinance 3715 is based on the uses of similar terms in private employment contracts. In the normal industrial context, the City argues, the elimination of a single position does not trigger the procedures provided during work-shortage layoffs for senior workers to displace junior workers by "bumping" downward into subordinate positions. The City makes much of the fact that Ordinance 3715 does not itself provide for any procedure to be used in determining senior employees' "bumping" rights in the event of a layoff. In this case, however, the phrase "layoff or reduction in force" is not found in an industrial labor contract, but in a municipal ordinance governing personnel policies for public employees. Unlike most private employers, cities provide relatively fixed levels of service from a relatively stable amount of revenue. In the public sector, cutbacks in the work force may not always happen in the dramatic across-the-board fashion familiar in the industrial context.

Furthermore, industrial labor contracts providing procedures for reductions in force do not typically cover managerial employees in the seniority bumping system. By contrast, Ordinance 3715 guarantees that its provisions "shall apply uniformly to Classified employees, Exempt Service Employees and Unclassified employees," and the last category "include[s] all those supervisory employees and employees who are not included within the former two categories." Ordinance 3715, Section II(A). It may be an intuitively surprising outcome that the elimination of a managerial position can trigger the operation of a seniority-based reassignment. This apparent anomaly is only a consequence of the unusual provision of the Ordinance, which applies "uniformly" to managerial and nonmanagerial employees alike.

The objectives and terms of the Ordinance taken as a whole further support the District Court's interpretation of Section II(E). Section I(A) of the Ordinance establishes the general personnel policies that

(4) Appointments, promotions, and other personnel action shall be based on qualifications, competency, and seniority,

(5) Every effort shall be made to stimulate high morale by fair administration of this policy and by every consideration of the rights and interests of employees consistent with the best interest of the public and the City,

(6) Continuity of employment covered by these rules and regulations shall be subject to good behavior, satisfactory

performance of work, and availability of funds.

Ordinance 3715, Section I(A)(4)–(6). In this case, Welbern was a qualified, competent employee with greater seniority than other employees in his department, and he was not charged with poor performance or misconduct. His dismissal due to the elimination of his position tends to conflict with the personnel policies defined in Section I(A), and Section II(E) appears to provide the mechanism for effectuating those policies. The City does not provide any compelling reason to believe that the seniority-protection procedures in Section II(E) could not have applied to Welbern, who was senior to his subordinates, and qualified to perform their work, when his position in their Department was eliminated as superfluous.

We do not have sufficient reason to disturb the District Court's judgment that Ordinance 3715 conferred a property interest in Welbern's continued employment. The parties seem to agree that if Welbern had such an interest, the City deprived him of this interest without due process of law by summarily terminating him. We therefore affirm the District Court's finding of liability under the Fourteenth Amendment.[3]

### III.

The District Court ordered a back-pay remedy which apparently compensated Welbern for what he would have earned in his prior position as Assistant Director from March 7, 1986 to the present, less interim earnings from other employment. As the City points out, this remedial order proceeded on the incorrect assumption that Welbern would have been earning the same salary after March 7, 1986 as before if he had not been terminated. But if Welbern had not been summarily fired, he still would have faced bumping down into another, no doubt less lucrative position. His

damages, then, are not the loss of his salary as Assistant Director, but the loss of his salary in whatever new assignment he would have received had his case been processed under Ordinance 3715. We reverse the District Court's back-pay award, and direct on remand that the District Court recalculate Welbern's back-pay damages based on the salary he would have received (less interim earnings) if he had bumped down into the next lower position in the Department for which he was qualified. This calculation depends, in turn, on a determination of what this new job would have been, an issue which appears unresolved on the present record. The District Court should conduct a further hearing to reach this factual determination. Both sides should be allowed to introduce evidence on the point.

Affirmed in part, reversed in part, and remanded.

BOWMAN, Circuit Judge, dissenting in part and concurring in part.

I respectfully disagree with the Court's conclusion that Welbern has been deprived of a constitutionally protected property interest in his job. By its terms, Section II(E) of Ordinance 3715 applies to layoffs or reductions in the work force. Welbern's termination resulted from a decision that his position was unnecessary and should be abolished in the interest of efficient management. No other position was abolished. To view this as a "layoff or reduction in force" within the meaning of the ordinance is, in my judgment, to give this language far too literal a reading. Moreover, prior practice supports the City's position that such an unduly literal interpretation reflects an incorrect reading of the ordinance, since it is an undisputed fact that the City has abolished positions in the past without invoking the provisions of Section II(E).

---

**3.** The application of Ordinance 3715 to Welbern could have been determined with greater authority if this action had been brought in the Arkansas courts. Neither party has requested that we abstain from deciding this case pending a resolution in state court of the dispositive state-law question. If we were now on our own motion to abstain from deciding this case, the parties would be faced with additional expense and uncertainty. A new lawsuit would have to be filed in a state court. Arkansas has no statute allowing federal courts to certify questions of state law to the state appellate courts.

The District Court accepted Welbern's argument that elimination of his position amounted to a "reduction in force" without any discussion at all of the meaning commonly accorded to that term in either the normal industrial context or the municipal context. Nor did the court cite authority of any kind in support of its conclusion on this critical issue. Its interpretation of the ordinance therefore is not entitled to deference, for it lacks both analysis and reasoned authority. *See Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1330 (8th Cir.1985).

Our Court attempts, *ante* at pp. 534–535, to provide a satisfactory rationale for the District Court's interpretation of the ordinance. I find this attempt unpersuasive. The purported distinctions between municipal employment and private employment strike me as being more fanciful than real, and certainly are not self-evident. They are unsupported either by citation to any authority or by anything in the record of this case. As for the Court's invocation of the general personnel policies of Section I(A) of Ordinance 3715, it is instructive that the District Court did not use these broad statements to support its decision, but relied only on Section II(E). It may have eschewed Section I(A) advisedly, since a careful reading of Section I(A) provides at least as much support for the City's position as for Welbern's. I refer especially to Section I(A)(5), which makes it clear that the ordinance is to be administered in a manner "consistent with the best interest of the public and the City." In the case at hand, the City determined that the interest of the public and the City would be served by the elimination of Welbern's position.

For these briefly stated reasons, I dissent from Part II. of the Court's opinion, in which the Court affirms the District Court's finding of liability. I concur in the remainder of our Court's opinion.