WESTERN FIREPROOFING
CO., Appellee,

v.

W.R. GRACE & COMPANY, Appellant.

No. 88–2396.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1989.

Decided Feb. 7, 1990.

Thomas C. Walsh, St. Louis, Mo., for appellant.

William Sanders, Kansas City, Mo., for appellee.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, and TIMBERS,* Senior Circuit Judges.

FAGG, Circuit Judge.

A jury found W.R. Grace & Company (Grace) liable on claims for fraudulent misrepresentation and tortious interference with business expectancies brought by Western Fireproofing Co. (Western). Grace appeals from the resulting judgment for $3.2 million actual and $10 million punitive damages. We affirm the jury's finding of liability and the actual damages award on the condition that Western remit the award of punitive damages; otherwise,

---

* The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Court of Appeals for the Second Circuit, sitting by designation.

we vacate the entire judgment and remand for a new trial on all issues.

## I. BACKGROUND

Beginning in 1934, Western sold and installed fireproof roofing structures for commercial and private buildings from its base in Kansas City, Missouri. Western also provided related architectural and engineering services. In connection with this business, Western became an "applicator" of a Grace roofing product known as "Zonolite." In late 1979, Grace announced its applicators would be required to enter into new license agreements covering the Zonolite product. Western was reluctant to sign the proposed agreement, primarily because it contained provisions that Western would not have an exclusive territory in which to promote Zonolite and that Western would be obligated to pay Grace a license fee each time it sold non-Grace products.

Early in 1980, Grace representatives attempted to persuade Western to sign the proposed agreement. A Grace vice president named Bruce Williams came to Kansas City to meet with Western's owner, Rodrick J. Cyr. According to Cyr, Williams said that if Western would sign the agreement, which by its terms established a nonexclusive arrangement, Western would nevertheless have an exclusive territory as long as it promoted Zonolite. Two other Grace employees corroborated Cyr's report of this meeting. Cyr also testified that Williams assured him Grace would not seek license fees under the agreement if Western sold non-Grace products. Williams denied making these representations and asserted that he neither intended for Western to have an exclusive Zonolite territory nor for Grace to waive the license fees. Western signed the agreement.

In 1983, two Western employees offered to buy the business from Cyr. When Cyr rejected their offer, they resigned and started a competing business in the Kansas City area. Grace immediately appointed the new company as a licensed Zonolite applicator. According to Western, Grace also assisted the new company in persuading customers and others to transfer roofing business, including the related architectural and engineering services, to the new company. Western also asserted Grace provided lower prices to the new company, enabling it to undercut Western's project bids.

Western then filed this action in state court. Western asserted that Grace fraudulently induced it to enter into the 1980 license agreement by representing that Western would, despite the agreement's contrary terms, have an exclusive territory for Zonolite. In addition, Western claimed Grace tortiously interfered with Western's business expectancies by licensing a competing Zonolite applicator within Western's exclusive territory and by assisting the competitor through preferential pricing and other improper tactics in obtaining Western customers. Grace counterclaimed for license fees under the agreement and removed the case to federal court based on diversity of citizenship. Before the case came to trial, Cyr sold Western's assets and two other businesses to the competing Zonolite applicator.

The jury returned a general verdict in favor of Western on its claims and on Grace's counterclaim. The district court denied Grace's motion seeking judgment notwithstanding the verdict, a new trial, or remittitur.

## II. PAROL EVIDENCE AND FRAUDULENT MISREPRESENTATION

One of the most hotly contested issues on appeal concerns Grace's argument that evidence of Williams's oral statements was admitted in violation of the parol evidence rule. *See, e.g., Emerick v. Mutual Benefit Life Ins. Co.,* 756 S.W.2d 513, 522 (Mo. 1988) (en banc) (general statement of parol evidence rule). Grace contends that although Western asserted it was fraudulently induced to sign the license agreement by Williams's oral representations, those statements contradicted the express terms of the parties' later written agreement and, thus, were barred by the parol evidence rule. Based on this contention, Grace argues Western did not make a sub-

missible case on its fraud claim. We disagree.

■ Under Missouri law, a party who is the victim of fraud in the inducement of a contract may choose among three avenues of relief. The party may: (1) rescind the contract and seek restoration of the status quo; (2) affirm the contract and pursue whatever contractual remedies may be available; or (3) bring an action seeking damages for the asserted fraud. *See Dowd v. Lake Sites, Inc.*, 365 Mo. 83, 276 S.W.2d 108, 112 (1955). The particular avenue of relief chosen is critical to the application of the parol evidence rule.

■ When a party seeks rescission of the contract based on fraud, parol evidence is admissible—not for the purpose of varying the terms of the contract, but to avoid the obligations of the contract entirely and restore the status quo. *See, e.g., Wallach v. Joseph*, 420 S.W.2d 289, 294 (Mo.), *cert. denied*, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967). An exception to this rule apparently exists in Missouri for fraud asserted as a defense to an action on a promissory note. *See, e.g., Bank of Kirksville v. Small*, 742 S.W.2d 127, 133 (Mo. 1987) (en banc). *But see Pinken v. Frank*, 704 F.2d 1019, 1022–24 (8th Cir.1983) (decided before *Bank of Kirksville* ).

■ In contrast, if a party elects to pursue contractual remedies (for example, reformation), the parol evidence rule prevents the court from enforcing the written contract as varied or altered by the assertedly fraudulent statements. *See, e.g., Dowd*, 276 S.W.2d at 112–13; *Stein v. Stein Egg & Poultry Co.*, 606 S.W.2d 203, 205–07 (Mo.Ct.App.1980); *Ezo v. St. Louis Smelting & Ref. Co.*, 87 S.W.2d 1051, 1052–54 (Mo.Ct.App.1935). In this case, Western did not file the action either to avoid entirely its contractual obligations with Grace or to enforce the contract as varied by the fraudulent oral statements. Instead, Western chose to bring an action seeking damages for the asserted fraud. In this situation, "the submissibility of [Western's] case depends not on the content of the written agreement, ... but [on] whether [Western] has established the nine

elements of fraud." *Essex v. Getty Oil Co.*, 661 S.W.2d 544, 549 (Mo.Ct.App.1983); *see also Smith v. Tracy*, 372 S.W.2d 925, 937–38 (Mo.1963); *Countess v. Strunk*, 630 S.W.2d 246, 254 (Mo.Ct.App.1982); *Forsythe v. Starnes*, 554 S.W.2d 100, 110–11 (Mo.Ct.App.1977).

The district court recognized this distinction when it ruled on Grace's posttrial motion raising the issue. The court observed that here "[Western] was not trying to enforce the contract as varied by the oral representations." Addendum at 5. Accordingly, the court held the parol evidence rule did not bar evidence of the oral statements because Western was "us[ing] the evidence as a basis for its fraudulent misrepresentation claim to show that it was fraudulently induced into entering the contract by the oral representations of [Grace's] agent." *Id.; see Essex*, 661 S.W.2d at 549. Having studied the applicable authorities, we believe the district court correctly concluded Missouri law allowed introduction of the oral statements in the circumstances of this case. *See Welbern v. Hunt*, 874 F.2d 532, 534 (8th Cir.1989).

■ We now consider Grace's other contentions pertaining to Western's fraudulent misrepresentation claim. In Missouri, Western must establish nine elements to recover for fraud. *See Emerick*, 756 S.W.2d at 519. Grace contends Western failed to make a submissible case on two of these essential elements, namely: (1) the falsity of the representations at the time Western claims they were made; and (2) Western's right to rely on those representations. We have carefully reviewed the record in light of the standards applicable to the existing verdict in Western's favor. *See Robertson Oil Co. v. Phillips Petroleum Co.*, 871 F.2d 1368, 1371 (8th Cir.1989) (submissibility standard generally); *Craft v. Metromedia, Inc.*, 766 F.2d 1205, 1218 (8th Cir.1985) (standard for submissibility same under federal and Missouri law), *cert. denied*, 475 U.S. 1058, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). This review convinces us that Western presented substantial evidence on the two challenged elements. This evidence properly permitted the fraud

claim's submission, and it supports the jury's resulting finding of liability.

## III. TORTIOUS INTERFERENCE

■ To recover for tortious interference with a business expectancy in Missouri, Western must show: (1) it had a valid business expectancy; (2) Grace knew of the business expectancy; (3) Grace intentionally interfered with that expectancy, inducing its breach; (4) Grace did so without justification; and (5) Grace's conduct damaged Western. *See O'Connor v. Shelman,* 769 S.W.2d 458, 461 (Mo.Ct.App.1989). Grace contends on appeal that for several reasons, Western also failed to make a submissible case on this cause of action.

■ Initially, Grace renews the essence of its earlier parol evidence argument and contends that "[r]eversal of the fraud verdict therefore also dooms the tortious interference judgment." Appellant's Brief at 27. We have already concluded the oral statements were properly admitted on Western's fraud claim. In addition, proof of the content of the parties' contract is not the key to Western's interference cause of action. The crux of that claim involves the extent to which Grace affected Western's business relationships with third parties and its overall business productivity.

In addition, Grace contends: (1) Western cannot sue on a tortious interference theory for breach of an oral promise; (2) the district court committed error in refusing to instruct the jury that the two employees who set up the competing business had an at-will employment relationship with Western and, thus, were entitled to begin a new Zonolite business; (3) Grace's actions were taken to protect a valid economic interest and, thus, were justified as a matter of law; (4) Western did not demonstrate a valid business expectancy; and (5) Western did not prove Grace intentionally interfered with Western's valid business expectancies or induced their breach. We reject each of these contentions.

■ Grace's first assertion misses the mark. Williams's promises to Cyr, while certainly part of the evidentiary picture on the fraud claim, are not the activity West-ern challenges in its claim for tortious interference. The basis of that theory is Western's claims that Grace and its new applicator essentially drove Western out of the Zonolite business through unfair tactics. This theory does not depend on Williams's oral promises to Cyr.

■ Regarding Grace's second contention, the district court properly refused to give Grace's proposed at-will instruction because it did not contain all the necessary elements and would be confusing to the jury. Tr. at 17:110. The proposed instruction could have improperly shifted the jury's attention to the employees' justification for leaving Western instead of Grace's justification for its conduct.

■ Grace's third argument also ignores the thrust of Western's tortious interference claim. Grace argues, essentially, that because it had the right to appoint a competing Zonolite applicator and to reap the potential economic benefits, Grace's action was justified as a matter of law. Once again, Grace ignores Western's claim that Grace did much more than merely appoint a Zonolite competitor. Western claimed Grace provided preferential pricing and unfairly lobbied past customers to move their business away from Western. We find no justification as a matter of law for Grace's challenged conduct, and the jury apparently credited Western's version of these events. Similarly, Grace's final two contentions that Western failed to make a submissible case on its tortious interference theory are essentially challenges to the jury's ultimate verdict. Based on our review of the evidence in the case, we decline to overturn the jury's determination.

## IV. DAMAGES

Finally, Grace makes a number of arguments on appeal challenging the jury's award of actual and punitive damages. In broad terms, Western sought damages for the reduction in its fair market value as a going concern from the time the competing Zonolite applicator began operating in 1983 until Cyr sold Western's assets in 1987. To

support this claim, Western introduced evidence of a declining trend in its gross profits after 1983 in addition to what it argued was a disproportionately low purchase price when Cyr sold Western's assets in 1987.

Western's documentary evidence included Western's federal income tax returns and two independent market value appraisals. Additionally, Cyr testified that based on his lengthy experience in the field, his company was worth approximately $3.2 million before his Zonolite competitor began business. Grace stipulated its net worth exceeded $1.3 billion. From that perspective, the jury's award of punitive damages equalled approximately three-fourths of one-percent of Grace's net worth and approximately three times the amount of actual damages.

### A. *Actual Damages*

Grace attacks the jury's actual damages award in two ways. First, Grace contends the damages sought are not legally recoverable under either Western's fraud or tortious interference theory and, thus, Grace failed to make a submissible case because the essential element of damage was missing. Second, Grace contends that even if damages are available, the methodology used to calculate them is flawed in this case.

■ Grace's first contention is based on its claim that a Missouri Supreme Court decision after this case was tried bars Western from recovering "benefit of the bargain" damages for profits lost as a result of Western's fraudulent statements. *See Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443–44 (Mo.1988) (en banc); *see also Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 629–31 (4th Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). We believe Grace's reliance on these cases is misplaced.

Western sought (and apparently received) damages for the $3.2 million reduction in Western's fair market value as a going concern and not for lost profits. Although Western presented evidence of lost profits in its case, this was part of showing the demise of Western's business as a result of Grace's activities. In addition, *Heberer* involved a different factual setting. In that case, a service station lessee claimed lost profits at a second station he never operated due to the lessor's fraudulent misrepresentations about a lease extension on his first station. *See Heberer*, 744 S.W.2d at 441–43. The Missouri Supreme Court held in that instance that there was no causal connection between misrepresentations regarding the first station's lease and theoretical lost profits on a second station the plaintiff did not lease at all. *See id.* at 443–44. In contrast, Western sought damages for fraudulent statements directly relating to the parties' single ongoing relationship concerning Zonolite and related services. The other case relied on by Grace interprets Maryland law and is not controlling or persuasive in this diversity case.

■ Grace also contends Western could not recover damages for its tortious interference claim because it failed to show any decrease in Western's value as a business that was the direct result of Grace's relationship either with the new Zonolite applicator or with outside contractors, architects, or engineers. We disagree. Once again, we believe a jury question was raised on the extent to which Grace's activities with the new Zonolite company damaged the value of Western as a business. The jury apparently was persuaded the damage was substantial, and we find no basis in the record to disregard that determination.

■ Grace's second contention takes issue with the method employed by Western to calculate the monetary effect of Grace's conduct on Western's market value. Grace contends Western's decreasing gross profits and ultimate resale value are incorrect measures of any effect because they fail to take into account a number of other specific factors. We have considered Grace's arguments and find them unpersuasive at this point in the case. Grace had the opportunity to present its own evidence on these issues and to attempt to call into

doubt the evidence presented by Western. In addition, beyond contending the evidence did not support submitting either of Western's theories to the jury in the first instance, Grace did not object to the district court's jury instructions regarding calculation of damages. *See* Tr. at 17:101–07, 17:198–99.

In sum, we believe Western made a submissible case on the issue of damages related to each cause of action, and we agree with the district court that there was "[a]mple evidence ... presented at trial to support the jury's verdict on both [Western's] claims." Addendum at 13. We also agree that "[t]he actual ... damages award[ ] [was] fully supported by the evidence and not a result of bias, passion, or prejudice on the part of the jury." *Id.*

B. *Punitive Damages*

■■ Grace also challenges the punitive damages award, claiming: (1) the jury was improperly instructed on the malice necessary to support a punitive damages award under Missouri law; (2) there was no evidence of the type of conduct necessary to support awarding punitive damages against Grace; (3) the jury's award was the result of passion and prejudice; and (4) the punitive award violates the eighth and fourteenth amendments of the United States Constitution. Although our review of the record convinces us there was sufficient evidence to submit the punitive damages issue to the jury and that the resulting award was not the product of passion and prejudice, we need only discuss Grace's first point.

After this case was tried, the Missouri Supreme Court invalidated the standard Missouri jury instruction on punitive damages that was identical to the one the district court gave in this case. *See Burnett v. Griffith*, 769 S.W.2d 780, 786–89 (Mo. 1989) (en banc) (striking down Missouri Approved Instruction (MAI) 16.01). The Missouri court held that MAI 16.01 did not accurately portray controlling principles of Missouri law because it "fail[ed] to explain to lay persons that a bad motive or reckless disregard for the rights of others is re-

quired" to justify an award of punitive damages. *Id.* at 789. Grace objected to the district court's punitive damages instruction on this ground and raised the issue again in its posttrial motion. In light of the *Burnett* holding, the jury instruction that precipitated the punitive damages award against Grace was flawed under Missouri law and, thus, requires reversal.

The Missouri Supreme Court's admonition to the state's trial judges that the flawed instruction was "hereafter[ ] not to be used," *id.*, does not alter our result. The state-approved jury instruction in question was not binding on the federal district court. *Grogan v. Garner*, 806 F.2d 829, 837 (8th Cir.1986). Instead, it was the district court's duty to instruct correctly on the controlling Missouri law. *Bersett v. K–Mart Corp.*, 869 F.2d 1131, 1135 (8th Cir.1989). The punitive damages instruction given by the district court at the time of the trial failed to explain clearly that law. Because "[t]he district [court] was not bound to use the language of MAI [16.01,] [the court] should have modified it to reflect the applicable law." *Id.*

■■ Although we have already decided the district court did not commit error in submitting both of Western's liability theories to the jury and that the resulting verdict on actual damages was amply supported by the evidence, we must decide whether we should remand the case for a new trial on the punitive damages issue alone. "[A] partial new trial ... may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). In the circumstances of this case, we conclude the question of punitive damages is not sufficiently distinct from the question of liability for fraud and tortious interference to permit a new trial on the issue of punitive damages alone. *See id.; H.J., Inc. v. International Tel. & Tel. Corp.*, 867 F.2d 1531, 1551 (8th Cir.1989); *McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1388–89 (8th Cir.1983),

*cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). Having concluded the verdict for actual damages on both of Western's liability theories is supported by substantial evidence, we believe Western should have an opportunity to choose between preserving its actual damages award by filing a remittitur for all punitive damages or having the case remanded to the district court for a new trial on all issues. *See Bankers Life & Casualty Co. v. Kirtley,* 307 F.2d 418, 426 (8th Cir.1962).

In the event the case is retried, the district court should determine what evidence from the earlier trial is necessary for resubmission of the punitive damages question and should use instructions conforming to the *Burnett* opinion. *See Burnett,* 769 S.W.2d at 789. The district court will then be in a position to rule, if requested to do so, on whether further instruction is necessary in view of Grace's federal constitutional challenges. *See Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc.,* — U.S. ——, 109 S.Ct. 2909, 2913, 2921, 106 L.Ed.2d 219 (1989) (rejecting eighth amendment excessive fines challenge to punitive damages and refusing to consider due process challenge because not raised in lower courts); *see also id.* 109 S.Ct. at 2923 (Brennan, J., concurring); *id.* at 2924 (O'Connor, J., concurring and dissenting); *Bankers Life & Casualty Co. v. Crenshaw,* 486 U.S. 71, 87–88, 108 S.Ct. 1645, 1655–56, 100 L.Ed.2d 62 (1988) (O'Connor, J., concurring).

## V. CONCLUSION

For the reasons discussed, we reverse the punitive damages judgment entered on the jury verdict. We affirm the district court's judgment holding Grace liable to Western for $3.2 million in actual damages on the condition that Western file a written remittitur for all punitive damages within ten days of the receipt of our mandate in the district court. If Western does not remit the punitive damages by making a timely filing with the clerk of the district court, the entire judgment will be vacated and the case will stand remanded to the district court for a new trial on all issues.

Before LAY, Chief Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges.

### ORDER DENYING PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC.

The suggestions for rehearing en banc are denied with Judge John R. Gibson dissenting from the denial.

In response to the petitions for rehearing, the opinion filed and the judgment entered on July 31, 1989, are vacated, and the panel today files a revised opinion; otherwise, the petitions for rehearing are denied.

JOHN R. GIBSON, Circuit Judge, dissenting from denial of rehearing en banc.

While expenditure of our limited judicial resources in diversity cases is of great concern to me, I am sufficiently disturbed with the decision of the court in this case that I would favor rehearing en banc. This is the second occasion in the last year in which we have remanded a case for new trial after the district judge gave a Missouri Approved Instruction that would be binding on a state court. In the first such case, *Bersett v. K–Mart Corp.,* 869 F.2d 1131 (8th Cir.1989), I also dissented. We have been very clear in stating that district judges in this circuit are not required to give such instructions. Nevertheless, when they do and when the later change in law is not foreseen, I think we err in overturning their decisions. The instruction here was given by a district judge with long experience in the law of the State of Missouri and the instruction given at the time was one that a state court would have been required to give. I would not now hold the instruction to be in error when the Supreme Court of Missouri, long after the trial, and after argument before the panel, changed the law to require that an instruction "hereafter" not be used. I would not use our limited resources to relitigate issues following such a change in the law.

In my view, the principles of *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), are violated by the court's ruling today. I would grant rehearing en banc.